UNITED STATES of America, Plaintiff-Appellee,

v.

Gene Grady BULLOCK, a/k/a Grady Gene Bullock, Defendant-Appellant.

No. 79–2008.

United States Court of Appeals, Fifth Circuit.

April 23, 1980.

Rehearing and Rehearing En Banc Denied May 30, 1980.

Lewis O. Unglesby, Baton Rouge, La., for defendant-appellant.

Donald L. Beckner, U. S. Atty., C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GOLDBERG, FRANK M. JOHNSON, Jr. and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

We must decide whether 18 U.S.C. App. § 1202(a)(1), defining as a criminal offense the receipt, possession, or transportation in commerce by a convicted felon of "any firearm," allows the government to treat each of several firearms not simultaneously received or possessed as a separate unit of prosecution. We affirm because in our view, given the proper circumstances, the statute does allow the government to prosecute each weapon separately.

Appellant, Gene Grady Bullock, believing that he was meeting with a recruit for the Ku Klux Klan, met with undercover Agent Grafton of the Bureau of Alcohol, Tobacco, and Firearms at a shopping center in Denham Springs, Louisiana. The men rode from the shopping center to the appellant's home in appellant's pickup truck. Upon arrival at appellant's residence, he took several firearms from a cabinet, displayed them to the agent, and claimed their ownership. After about an hour at the residence, the appellant and the agent rode back to the shopping center in appellant's pickup truck.

During the trip back to the shopping center, appellant showed the agent a .357 magnum pistol which he took from under the seat of the truck. Upon arrival at the shopping center, appellant was arrested by other agents of the Bureau of Alcohol, Tobacco, and Firearms. The .357 magnum pistol was seized immediately and all other weapons charged in the indictment were seized, pursuant to a search warrant, at appellant's residence. A more complete discussion of the facts is contained in this court's opinion upholding appellant's conviction. *United States v. Bullock*, 590 F.2d 117 (5th Cir. 1979). This appeal is from an order of the trial court which denied appellant's motion for reduction of sentence under Rule 35 of the Federal Rules of Criminal Procedure.

The statute under review provides:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State of any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States,

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C. App. § 1202(a).

In five counts, the indictment charged the appellant with violations of 18 U.S.C. App. § 1202(a)(1). Count I charged receipt and possession of a 30/30 rifle which the evidence indicates was purchased by appellant's wife eleven years before its seizure. Count II charged receipt and possession of a .357 magnum pistol purchased by appel-

lant's wife in 1976 and kept in Bullock's truck. Counts III and IV charged receipt and possession of two .45 caliber carbines which the evidence showed were acquired from two different individuals. Count V charged receipt and possession of a 30/30 rifle given to the Ku Klux Klan by a third-party.

Following conviction, the trial court imposed a sentence of two years imprisonment to run consecutively on each of Counts I, II and III. The trial court also imposed probation on Counts IV and V to run concurrently, with a condition of probation that appellant pay a $1,000 fine.

The appellant contends that it is impermissible for a trial court to impose consecutive sentences for possession of multiple firearms, when the possession occurs at the same time and place. The government agrees with the appellant, but states that the proof in this case, on the record as a whole, shows receipt of the firearms at different places and times. Our resolution of these contentions will determine the true issue in the case: the correctness of the imposition of consecutive sentences on Counts I, II and III.

There is no controlling precedent directly on point in the Fifth Circuit. The Sixth Circuit, in *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir. 1976), held that: "Only one offense is charged under the terms of § 1202(a)(1) regardless of the number of firearms involved, *absent a showing that the firearms were stored or acquired at different times or places*." 536 F.2d at 721 (emphasis added). In *Rosenbarger*, how-

ever, the court did not allow separate convictions because on the facts as stipulated by the prosecution and defense counsel, the possession of all the firearms was at the same time and place.

The Seventh Circuit was faced with this issue in *McFarland v. Pickett*, 469 F.2d 1277 (7th Cir. 1972), and *United States v. Calhoun*, 510 F.2d 861 (7th Cir. 1975). That circuit, like the Sixth Circuit, held that absent a showing that two firearms were stored or acquired at different times or places, there is only one offense.

The Eighth Circuit, in determining the allowable unit of prosecution in *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975), after a full analysis of the legislative history and the statutory scheme, found the statute to be ambiguous. Citing *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Eighth Circuit resolved the ambiguity in favor of the accused. Thus, it held that simultaneous possession of several firearms constituted one offense. The court, however, was careful to point out that: "The proof at trial showed that appellants were in possession of the four firearms at a single time and place." *Id.* at 666.

The Sixth, Seventh, and Eighth Circuits follow the rule that the government may not treat each of several firearms simultaneously possessed as a separate unit of prosecution under 18 U.S.C. App. § 1202(a)(1).[1]

In the Fifth Circuit, although we have not ruled directly on the issue, several cases have predicted the holding that we make today.[2] This court addressed a similar issue

---

1. In *United States v. Steeves*, 525 F.2d 33, 39 (8th Cir. 1975), the court stated: "[w]e are satisfied that if a convicted felon receives a firearm on one occasion and later receives another firearm on another occasion, he is guilty of two offenses assuming that prior to the respective receipts the two guns had moved in interstate commerce.

 * * * * * *

In view of what has been said, it follows that if the defendant unlawfully received the respective weapons at different times or on different occasions and if prior to his receiving them the weapons had moved in interstate commerce, the defendant was guilty of two offenses rather

than one, and the district court did not err in refusing to merge the two counts. . . ."

2. In *United States v. Smith*, 591 F.2d 1105 (5th Cir. 1979), the court was indirectly presented with this issue. The contentions made and the court's reaction to them are best noted through the court's statement:

Smith next contends that the trial court erred in submitting a single issue of guilt or innocence to the jury when Smith was charged in four separate counts. This contention is an outgrowth of Smith's original motion to dismiss the indictment in which he alleged that the indictment improperly stated four separate counts but charged only one offense

in *United States v. Gilbert*, 573 F.2d 346 (5th Cir. 1978). There, the defendant was convicted of two counts of theft from an interstate freight shipment and of two counts of possession of the goods stolen therefrom, in violation of 18 U.S.C. § 659. Count I of the indictment charged the theft of two coils of galvanized steel that were in shipment from Ohio to Tyler, Texas, and Count II charged possession of the two stolen coils. Count III charged the theft of four coils of galvanized steel that were in shipment from Michigan to Houston, Texas, and Count IV charged possession of the four stolen coils. The trial court sentenced Gilbert to concurrent seven-year sentences on Counts I and II and to concurrent seven-year sentences on Counts III and IV, the two sets of concurrent sentences to run consecutively.

This court affirmed the convictions in *United States v. Gilbert*, 537 F.2d 118 (5th Cir. 1976). The Supreme Court granted certiorari and remanded the case for consideration of two cases, *Solimine v. United States*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976) and *United States v. Gaddis*, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1977). *United States v. Gilbert*, 430 U.S. 902, 97 S.Ct. 1169, 51 L.Ed.2d 578 (1977). *Solimine* held that convictions and concurrent sentences for theft as well as receiving the stolen property are improper. *Gaddis* held that convictions of robbery and receiving or possessing the proceeds of the robbery are improper. On remand, the court vacated Gilbert's convictions on Counts I and III, the theft counts, but again affirmed the convictions on Counts II and VI, the possession counts. *United States v. Gilbert*, 553 F.2d 990 (5th Cir. 1977).

The defendant then moved the district court for a reduction of sentence, asserting that the consecutive sentences on Counts II and IV constituted multiple punishment for the same offense. The district court denied the motion to reduce and Gilbert appealed. This court rejected Gilbert's contention that although the coils may have been stolen from separate interstate shipments, they were possessed simultaneously on one truck and remained together while in his possession, meriting only one possession and the imposition of only one sentence. The evidence showed that the coils, like the guns in the instant case, were received at different times. They were separate and distinct offenses.

In *United States v. Tarrant*, 460 F.2d 701 (5th Cir. 1972), we held that an accused possessing five unregistered firearms was properly convicted on five counts of unlawful possession of unregistered firearms. Our decision rested, however, on the overriding tax considerations present. We said:

> This legislative purpose clarifies congressional intent to collect the transfer tax payable on each firearm transferred. Each possession of an unregistered firearm by Tarrant deprived the government of the proper tax due and owing on that weapon. Since Congress was interested in collecting the tax on each weapon, clearly separate offenses for each firearm were intended.

460 F.2d at 704.

In resolving this issue, the courts have not found the legislative history to be helpful. All of the circuits have found the statutory scheme ambiguous when considered in a factual situation that indicates simultaneous possession of the firearms. Common sense and logic, however, will not support a holding that the receipt of firearms at separate times must merge into one possession, thus, one offense. In addressing this evil, could Congress have intended to deter receipt as well as possession of firearms by convicted felons and yet design the

against the United States. The latter contention is supported by *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir. 1976), cert. denied, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); and *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975), in which the courts held that *simultaneous pos-*

*session* of several weapons constitutes only one offense under Section 1202(a). The trial judge agreed that only one offense was charged and instructed the jury accordingly. 591 F.2d at 1107 (emphasis added).
Our case of *United States v. Carty*, 447 F.2d 964 (5th Cir. 1971), is to the same effect.

statute to only allow one punishment no matter how many separate receipts and possessions occurred? We think not. Any other determination would allow convicted felons and terrorists to establish armories where all of their weapons would be kept. The person in custody of the armory would then be subject to only a single charge of possession, although thousands of illegal and dangerous weapons were received and stockpiled at different times.

Finally, appellant contends that the sentence imposed for Count I must be vacated. Count I charged receipt and possession of a 30/30 rifle which the evidence showed was purchased by appellant's wife in Seattle, Washington, in 1968. Appellant argues that his conviction on this count must be vacated because there was no evidence that he received that weapon subsequent to October 22, 1968, the effective date of the Omnibus Crime Control and Safe Streets Act of 1968, of which § 1202(a)(1) is a part. This point is well taken, but the record shows that the other weapons were received at different times and places. Although the four firearms at appellant's residence were possessed at the same time and place, all except the 30/30 rifle in Count I were received at different times, subsequent to the effective date of the Act. Therefore, Count I was established by proving possession after the effective date of the Act, and the requisite connection to interstate commerce.

 We hold that 18 U.S.C. App. § 1202(a)(1), defining as a criminal offense the receipt, possession, or transportation in commerce by a convicted felon of "any firearms," allows the government to treat each of several firearms not simultaneously received or possessed as separate units of

prosecution. The appellant can be punished separately for separate receptions and separate possessions.

Accordingly, the sentences are

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

I agree with the majority's statement of the controlling legal principles in this case. But because I cannot agree with their application of these principles to the circumstances of this case, I dissent.

Defendant was convicted under a five count indictment for violation of 18 U.S.C. App. § 1202(a).[1] Each count charged that defendant, having been previously convicted of a felony, "[o]n or about the 15th day of August, 1977, at the City of Denham Springs, Louisiana, in the Middle District of Louisiana, . . . did knowingly receive and possess in commerce and affecting commerce" the separate firearm named in that count. The district court charged the jury in these same terms; it told the jury that as one of the essential elements of each count "the Government must prove beyond a reasonable doubt that the defendant at the time and place charged—that is on or about this date—knowingly received or possessed a firearm." Trial Transcript at 243.

The Government never attempted to prove that defendant *received* the weapons at the time and place charged in the indictment. Instead, it proved that defendant *possessed* the weapons at the specified time and place. In fact, the major conflict in the trial of the case was whether defendant was legally in possession of the weapons, four of which were stored in the house of his estranged wife and one of which was stored in a truck which was registered to

---

1. 18 U.S.C.App. § 1202(a) provides:
 Any person who—
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or
 (2) has been discharged from the Armed Forces under dishonorable conditions, or
 (3) has been adjudged by a court of the United States or of a State of any political subdivision thereof of being mentally incompetent, or

 (4) having been a citizen of the United States has renounced his citizenship, or
 (5) being an alien is illegally or unlawfully in the United States,
 and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

another individual but driven by defendant. Further, in its opening and closing arguments, the Government repeatedly told the jury that the question it must decide was whether defendant *possessed* the weapons; it never argued that defendant received them at the time and place charged.[2] Finally, the trial court took notice of the fact that the indictment charged both receipt and possession—two separate acts—in the following terms:

> Now, where a statute specifies several alternative ways, such as in this case, it says if he receives and possesses—it has alternative ways that a person can violate the statute—the Government doesn't have to prove both ways. If they prove either that he received or possessed would be sufficient [*sic*], knowingly, of course— would be sufficient proof of that particular element.
>
> *Of course, the crucial part of this case involved the question of possession* . . .

Trial Transcript at 245–46. (Emphasis supplied) After the jury returned its verdict of guilty on each of the five counts, the district court imposed the sentences complained of in defendant's Rule 35 motion.

The Government in this appeal argues for the first time that the separate convictions may stand because there is evidence in the record showing that defendant received the weapons at distinct times and places, other than those charged in the indictment and instructions, so that each weapon constitutes a separate offense. Had this theory been presented in the court below, it would be sufficient to sustain separate convictions.

On this record, however, I do not believe that the Government's new, *post hoc* rationalization of the sentences imposed can withstand scrutiny.

The evidence of distinct acts of receipt upon which the Government now relies is not consistent with its sole theory of receipt presented in the indictment and the jury instructions. As noted, the indictment and instructions charged receipt of each of the weapons on August 15, 1977, in Denham Springs, Louisiana. The Government presented absolutely no evidence to support these allegations. It merely attempted to prove that defendant possessed the weapons at the specified time and place. The court instructed the jury that "[o]f course, the crucial part of the case involved the question of possession." In these circumstances, I think the only issue made fairly submissible to the jury was the question of possession.[3] Given this fact, I would not allow the Government to rely on the incidental evidence of distinct receipts of the weapons[4] to establish a totally *post hoc* rationalization of the sentences imposed below. The defendant was, quite simply, tried for possession. The Government cannot bootstrap a new theory of the case onto incidental evidence of receipt presented below when the jury was never told it could convict defendant on the basis of that evidence.

I would nevertheless hold that the Government proved two distinct offenses of possession. One of the weapons was stored in a place separate from the other four. Under the principles established by other circuits and adopted by the majority, this

---

**2.** Typical of the Government's argument is the following:

> And finally, the crux of the matter [is] whether or not the Defendant, Gene Grady Bullock, did on or about the fifteenth of April—or August, 1977, possess those firearms. Possessed them, ladies and gentlemen. Nobody has charged him with ownership or anything, merely that he possessed.
> Trial Transcript at 218.

**3.** Proof of possession cannot of itself establish receipt under the statute: a receipt charge "is not synonymous with a possession charge since receiving requires more than mere proof of possession. Time of receipt and venue must be

proven as well." *United States v. Winer*, 519 F.2d 256, 257 (8th Cir. 1975) (per curiam). *See United States v. Kelly*, 519 F.2d 251 (8th Cir. 1975).

**4.** This evidence is "incidental" because it was presented solely through defendant's witnesses, as part of his attempt to show that he did not have legal possession of the weapons by showing that others had acquired them, and through the Government's attempt to rebut this argument. This fact thus reinforces my conclusion that the receipt theory now argued by the Government was never presented to the jury.

separate possession is a basis for two separate convictions. Thus, two of the consecutive sentences were permissible.