RHESA HAWKINS BARKSDALE, Circuit Judge:
For his seven guilty-plea convictions concerning child pornography, John Anthony Planck challenges only his three possession convictions, contending the underlying counts are multiplicitious. Regarding his sentence, he challenges the imposition of a life term of supervised release. AFFIRMED.
I.
In 2003, United States Immigration and Customs Enforcement Agents were engaged in an online child-pornography investigation. Planck was identified as a computer user responsible for uploading child pornographic images onto a Government-monitored website. In August 2004, a search warrant was executed at his residence; a desktop computer, laptop computer, and 223 computer diskettes were seized.
The desktop computer contained 88 videos and still child-pornography photographs; the laptop computer, four still photographs; and the diskettes, thousands of images. In total, Planck’s computer data contained approximately 5,000 child-pornography images.
Planck was charged with four counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), 2252A(b)(l), and 2256; and three counts of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256. The possession counts were based on his having child pornography on his two computers and diskettes.
Planck moved to dismiss two of the possession counts on multiplicity grounds, contending he was being prosecuted three times for the same possession-of-child-pornography act. The Government responded that, although the counts arose under the same statutory provision, the device involved in each count (desktop computer, laptop computer, and diskettes), and the images in each of those devices, differed.
*503 The district court denied Planck’s motion. In August 2005, he pleaded guilty to all seven counts.
The November 2005 Presentence Investigation Report (PSR) recommended a base offense level of 32, based on the post-Booker advisory 2003 Sentencing Guidelines. The recommended advisory Guidelines range was 121 to 151 months imprisonment. Noting the Guidelines suggested a two to three year term, the PSR instead recommended the statutory maximum of a life term, for supervised release, pursuant to Guidelines § 5D1.2(c) (term of statutory release should not be less than any statutorily required minimum). Planck did not object to that recommendation.
In December 2005, adopting the recommendations in the PSR, the district court sentenced Planck, inter alia, to 121-months imprisonment on the distribution counts and 120-months on the possession counts, to be served concurrently. The court also imposed a life term of supervised release, in accordance with § 5D1.2(c). After imposition of sentence, Planck again objected to the possession counts on multiplicity grounds; he again did not object to the supervised release.
II.
A.
Planck first contends two of the three possession counts are multiplicitious and should be dismissed. Multiplicity claims are reviewed de novo. United States v. Brechtel, 997 F.2d 1108, 1112 (5th Cir.1993). The rule against multiplicitous prosecutions stems from the Fifth Amendment’s proscription against double jeopardy. E.g., United States v. Kimbrough, 69 F.3d 723, 729 (5th Cir.1995). The rule prevents the Government from charging a single offense in more than one count of an indictment. United States v. Heath, 970 F.2d 1397, 1401 (5th Cir.1992). “The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense.” United States v. Swaim, 757 F.2d 1530,1537 (5th Cir.1985).
In deciding whether an indictment is multiplicitious, we look to “whether separate and distinct prohibited acts, made punishable by law, have been committed”. United States v. Shaid, 730 F.2d 225, 231 (5th Cir.1984) (quoting Bins v. United States, 331 F.2d 390, 393 (5th Cir.1964)). To do so, we must first determine the “allowable unit of prosecution”, see United States v. Reedy, 304 F.3d 358, 365 (5th Cir.2002) (quoting United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952)), which is the actus reus of the defendant, United States v. Prestenbach, 230 F.3d 780, 783 (5th Cir.2000).
The issue at hand is a matter of first impression for our court. Therefore, we look to our precedent in analogous cases to guide our analysis. Section 2252A(a)(5)(B) proscribes “knowingly possessing] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography _” Plank contends: despite the possession of child pornography in three different types of devices, his acts still constituted only a single violation of § 2252A(a)(5)(B), because he was found in possession of the images at the same time and place.
In support, Planck cites Prestenbach. There, the defendant was convicted on four counts for possessing four altered money orders in a bottle, in violation of 18 U.S.C. § 494, which made it a crime to “[knowingly] possess ... any such false, forged, altered, or counterfeited writing”. In Prestenbach, only a single act of possession was alleged. 230 F.3d at 783.
Our court reversed the conviction, holding: where “contraband is possessed at a *504 single place and time, there is a single act of possession and a single crime”. Id. “Keeping four altered money orders in a ... bottle is one action, and therefore one crime.” Id. at 784. Notably, however, Prestenbach also stated: had “the government proved separate acts leading to ... possession of the altered money orders, it [would be] ... a different case”. Id.
Statutes punishing the possession of firearms by felons lend similar support. Although 18 U.S.C. § 922(h) punishes the “possession]” or “recei[pt]” of “any firearm or ammunition” traveling through interstate commerce, the “firearms themselves [are not] allowable units of prosecution, unless they were received at different times or stored in separate places”. United States v. Hodges, 628 F.2d 350, 352 (5th Cir.1980) (emphasis added); see also United States v. Berry, 977 F.2d 915, 920 (5th Cir.1992) (simultaneous possession of firearms and ammunition can sustain multiple violations of 18 U.S.C. § 922 if firearms were obtained at different times or stored in separate places). Congress chose not to punish the “undifferentiated possession or receipt of multiple firearms ... more severely than the possession or receipt of a single firearm”. Hodges, 628 F.2d at 352 (emphasis added). But again, a defendant could be charged with multiple violations of the statute for receipt or possession of different firearms at different times. United States v. Bullock, 615 F.2d 1082, 1085-86 (5th Cir.1980).
“Where a defendant has a single envelope or book or magazine containing many images of minors engaging in sexual activity, the government often should charge only a single count.” Reedy, 304 F.3d at 367. Here, however, the desktop, laptop, and diskettes Planck possessed were three separate types of material or media, each capable of independently storing images of child pornography. Along that line, where a defendant has images stored in separate materials (as defined in 18 U.S.C. § 2252A), such as a computer, a book, and a magazine, the Government may charge multiple counts, each for the type of material or media possessed, as long as the prohibited images were obtained through the result of different transactions.
A contrary result would allow amassing a warehouse of child pornographic material — books, movies, computer images — with only a single count of possession as a potential punishment. As Bullock noted, when discussing the firearms statute:
[C]ould Congress have intended to deter receipt as well as possession of firearms by convicted felons and yet design the statute to only allow one punishment no matter how many separate receipts and possessions occurred? We think not. Any other determination would allow convicted felons and terrorists to establish armories where all of their weapons would be kept. The person in custody of the armory would then be subject to only a single charge of possession, although thousands of illegal and dangerous weapons were received and stockpiled at different times.
Bullock, 615 F.2d at 1086.
Recently, in United States v. Buchanan, 485 F.3d 274 (5th Cir.2007), our court reversed a multiplicitous conviction under 18 U.S.C. § 2252(a)(2), which proscribes, inter alia, the receipt of child pornography. Buchanan was convicted, following a jury trial, on four separate counts, for having accessed and saved to his computer four different child pornographic images. Id. at 277-78. Our court held the Government “bore the burden of establishing multiple counts by charging and proving separate receipts” of the contraband material; it failed to meet its burden by not “al-leg[ing] separate receipt of the four images *505 identified”. Id. at 282. Buchanan is, of course, distinguishable; in a receipt/distribution statute, such as 18 U.S.C. § 2252(a)(2), each separate receipt of child pornography violates the statute. Id. at 279-82; cf. United States v. Gallardo, 915 F.2d 149, 151 (5th Cir.1990) (each separate use of the mail to transport or ship child pornography should constitute a separate crime).
For the possession statute in issue, however, the actus reus is the possession of child pornography; the Government need only prove the defendant possessed the contraband at a single place and time to establish a single act of possession and, therefore, a single crime. Prestenbach, 230 F.3d at 783. Through different transactions, Planck possessed child pornography in three separate places—a laptop and desktop computer and diskettes—and, therefore, committed three separate crimes. The counts are not multiplicitous.
B.
In contesting his life term of supervised release, Planck concedes he did not object to that term in district court. Therefore, we review only for plain error. Fed.R.CRIm.P. 52(b). To establish reversible plain error, a defendant must show a clear or obvious error affected his substantial rights. E.g., United States v. Castillo, 386 F.3d 632, 636 (5th Cir.2004). Even if the defendant does so, we retain discretion to correct the plain error; generally, we will do so only if it “affects the fairness, integrity, or public reputation of judicial proceedings”. Id. There is no reversible plain error.
The policy statement in Guidelines § 5D1.2 recommends a maximum term of supervised release for sex offenders who are convicted under Chapter 110 of the United States Code (Sexual Exploitation and Abuse of Children), particularly those who commit crimes “perpetrated against minors”. U.S.S.G. § 5D1.2(c) & cmt. n. 1 (2003). Read in conjunction with statutory provisions governing supervised release, district courts are authorized to impose a life term of supervised release on sex offenders, particularly those who commit crimes against minors. United States v. Allison, 447 F.3d 402, 405 (5th Cir.2006).
Planck first claims his offense does not qualify under § 5D1.2(a)(2), asserting that consuming and distributing, unlike manufacturing, child pornography is not a crime perpetrated against a minor. In that regard, he further claims: had the drafters of the Guidelines intended for all sex offenses under Chapter 110 to be encapsulated within § 5D1, they would have omitted the qualifier “perpetrated against a minor”.
Possession and distribution of child pornography are crimes perpetrated against a minor. As this court has stated previously, a child may be victimized in three distinct ways:
First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials .... Second, the mere existence of child pornography represents an invasion of privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent .... Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.
United States v. Norris, 159 F.3d 926, 929-30 (5th Cir.1998) (internal citations, quotation marks, and emphasis omitted).
Under the advisory-Guidelines regime imposed by United States v. Booker, *506 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a district court must still consider the sentencing considerations provided in 18 U.S.C. § 3553(a). E.g., United States v. Smith, 440 F.3d 704, 706 (5th Cir.2006). In the alternative, Planck claims: even if he qualified for an upward departure, it was not warranted because his case was not outside the heartland of a typical case.
In imposing the supervised release, the district court stated it was intended to “serve as a deterrent [for the defendant] from continued elicit [sic] behavior involving sexual conduct of minors and/or the possession of child pornographic materials that would address the need to protect the public from further crimes of this defendant”. These stated reasons are consistent with the sentencing factors in § 3553(a). See 18 U.S.C. § 3553(a)(2)(B, C) (“deterrence” and “protect[ing] the public from further crimes of the defendant” as sentencing factors). Furthermore, because of the seriousness of the offense, we have previously upheld life terms of supervised release against sex offenses perpetrated against minors. See Allison, 447 F.3d at 407 (“[T]he decision to departure upward ... [is] consistent with Congress’s and the Sentencing Commission’s intention to punish child sex offenders with life terms of supervised release”.).
III.
For the foregoing reasons, the judgment is

AFFIRMED.